In re WHYARD, Justice of the Peace.

(Supreme Court, Appellate Division, Second Department.    October 18, 1907.)

JUSTICES OF THE PEACE—MISCONDUCT—REMOVAL FROM OFFICE.

A justice of the peace, when persons charged with an offense were brought before him, would. commit them until the day following, in violation of the express provisions of Code Cr. Proc. § 191, and then discharge them, without entering a statement as to the reason for such discharge, as expressly required by Code Cr. Proc. § 207. He presented falsified bills to the town for services, and did not keep a record in his criminal docket of the names and residences of witnesses, as expressly required by Code Cr. Proc. § 220, nor enter cases as they were heard, but hired a person at different times to writ up such entries in the dockets as were apparently needed to corroborate his bills to the town. *Held* conduct justifying a removal from office.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Justices of the Peace, § 16.]

Application for the removal from office of William W. Whyard, a justice of the peace of the town of Orangetown, Rockland county, N. Y.    Granted.

The following is the opinion of Beattie, Referee:

The duties of the defendant as a justice of the peace were clearly defined by statute, and, as he had occupied the office since the year 1894, he cannot plead his inexperience in defense or palliation of the acts which are charged against him, and by reason of which it is sought to have him removed from office. It appears by the uncontradicted proof that when a person was brought before the respondent, charged with an offense, instead of proceeding at once to an examination as to the guilt of the accused, he made out a commitment under which the defendant was committed until the day following, and that, upon an examination then had, the defendant in almost every instance was discharged, without any statement being made and entered as to the reason for such discharge, as required by section 207 of the Code of Criminal Procedure. It could hardly be possible that, out of the large number of persons thus imprisoned, great injustice should not be done to some, and from the fact that most of the prisoners were discharged without a conviction it is quite probable that most of the arrests were wholly without any justification. The specific charge against the respondent is that the bills presented by him for services rendered in such cases were false and fraudulent, and that question must be determined upon the assumption that all the persons, the arrest of whom forms the basis for the bills, were in fact brought before the justice, because, however suspicious and unreasonable the bills may appear, there is no evidence that an arrest was not made in each case for which a charge was made.

The statute (Code Cr. Proc. § 191) provides that "the examination must be completed at one session, unless the magistrate, for good cause shown, adjourn it." People v. McKenna, 62 App. Div. 327, 331, 70 N. Y. Supp. 1057. The dockets kept by the justice do not disclose any reason or cause for the commitment of the accused in any case for hearing on the day following. The reason, however, is made clear by the bills presented, because by pursuing such a course the justice made a charge in about 600 cases of 25 cents for the commitment and 25 cents for the adjournment, and, having charged the sum of $1 for the arraignment on the first day, the respondent charged a like sum for the examination on the second day. All of these items were for services which the law did not authorize the respondent to render under the circumstances disclosed, and the amount thus charged were clearly false and fraudulent charges against the town. As has been said, the dockets do not disclose any other reason for the course pursued, and it is most extraordinary that, of the whole number arraigned, practically all of them should plead not guilty upon the first day, and that their innocence should, almost without

exception, be established upon the second day. Of the cases thus charged for, there were 103 cases in which the accused was charged with being a tramp, 234 cases in which the charge was vagrancy, 28 cases in which the charge was petit larceny, and 245 cases in which the charges were for various misdemeanors. Of the whole number arrested in that year, about 630, there were not more than 30 convictions, followed by sentence.

The respondent was required to keep a docket of his proceedings in all criminal cases, "and to forthwith enter correctly at the time thereof full minutes of all business done before him as such justice and as a Court of Special Sessions in criminal actions and in criminal proceedings," and also to enter in the minutes "in every such docket the names of the witnesses sworn and their places of residence, and any failure to make and enter in such docket forthwith the entries required to be made" was made a misdemeanor, and upon conviction, in addition to the punishment provided by law, the delinquent forfeited his office. Code Cr. Proc. § 220. The respondent was called as a witness in his own behalf, and produced a docket which he testified was the one kept by him during the year 1904. When it appeared that only 23 cases were entered in that docket in that year, he testified that there must be another docket, and two other dockets were subsequently produced, in one of which most of the cases set forth in the bills were entered. In none of the dockets were there any entries showing the names and places of residence of any witnesses in any case, although a printed statement appeared in the docket, with a blank space following for the entries required. The requirement as to the entry of the names and places of residence of the witnesses is made imperative by the statute, and the great importance of the entries is thus emphasized. It is obvious that the basis for the requirement was that, through a compliance with it, the identity of each defendant could be established whenever it came in question, and the persons named as witnesses could also speak as to the fairness and regularity of the proceeding.

It also appeared that the respondent personally never made any entries in the dockets, but employed one Echert. From the testimony of Echert it appeared that none of the cases were entered at the time of the hearing, and the only apparent reason for the keeping of any docket was that the entries therein could be used as a corroboration of the bills to be prepared for the respondent, to enable him to assign the same from time to time during the year; that whenever the respondent was in need of money he employed Echert to make out his bill against the town from whatever papers he could find relating to criminal cases to that time, and the respondent, having sworn to the bill, without verifying it by a comparison with the docket or other papers, would assign it on the same day. None of the items of costs in the various cases were entered in the docket, but the bills were not in any wise deficient in that respect. The respondent, in making out his bills for services as a member of the town board, made repeated duplications of the charges for such services, and in some instances, and at different times, verified bills in which all the charges were duplicated. The transactions involved in all the matters covered by all the bills were of such a simple nature that there can be no question of inadvertence or clerical error. On the contrary, the respondent seeks to justify all the charges upon the ground that he had repeatedly made out like bills for similar services performed under like conditions, and had secured their audit and payment. There can, therefore, be no doubt that the respondent made out all the bills in question with the deliberate intention of securing payment of each and all of the illegal items contained therein. The facts are that the office which the defendant occupied, one of the oldest known in the law, was used and administered by him solely as a means to secure all that he could extort by it as a source of income.

The other grounds upon which the proceeding is based may be passed over without comment, except the charge relating to the attempt of the respondent to seize the steam launch of one Luebers, while the owner was in possession of it upon the Hudson river. It is of slight importance whether the respondent was or was not properly convicted of an assault growing out of his conduct on that occasion. The conceded facts are that Luebers was the owner of the boat and was lawfully in the possession of it. The respondent,

106 N.Y.S.—26

having a claim against another person for materials used in building the boat, secured another boat, and, in company with a constable of the town and several other persons, pursued the Luebers boat and endeavored to take forcible possession of it. The respondent had not issued any process to seize the boat, nor was any proceeding pending before him, either against Luebers or the boat itself, and his only object was to secure, by force and violence, the collection of the claim which had been placed in his hands as justice of the peace.

The defendant is to be judged by his own acts and omissions, and a bare recital of the more flagrant violations of law of which he has been guilty demonstrates that the respondent should be removed from office.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Frank Comesky, for the motion.
Aaron T. Levy, opposed.

PER CURIAM. Report of referee confirmed, on the opinion of Hon. John J. Beattie, referee, and respondent removed from the office of justice of the peace of the town of Orangetown, Rockland County, N. Y.